DESERET NATIONAL BANK, APPELLANT, v. HEATH
NUCKOLLS, APPELLEE.

[FILED NOVEMBER 18, 1890.]

**Judgment:** VOLUNTARY PAYMENT. Money recovered and paid on legal process upon a judgment of a court of competent jurisdiction rendered in a suit or proceeding in which the court had jurisdiction of the subject and the parties thereto, or voluntarily paid in satisfaction of the judgment or process, cannot be recovered back in a subsequent action, while such judgment remains in force unreversed and unmodified.

APPEAL from the district court for Richardson county. Heard below before APPELGET, J.

*Charles Offutt,* for appellant.

*Isham Reavis,* and *E. F. Warren,* for appellees.

*S. H. Calhoun, pro se.*

See opinion for citations of counsel.

COBB, CH. J.

This action is in the nature of a creditor's bill, brought in the name of the Deseret National Bank, of Salt Lake City, against Heath Nuckolls and others, in the district court of Richardson county, in which a decree was rendered for defendant Nuckolls on March 18, 1889, for $993.66, and from which decree the plaintiff appeals to this court.

In the summer of 1879 one S. F. Nuckolls was indebted to the Deseret National Bank in the sum of $1,000, and as security assigned a note made payable to himself by Heath Nuckolls for the sum of $987.87 and accrued inter-

est.   S. F. Nuckolls died before the bank's debt became due, and at the request of his representative the bank proceeded to collect the collateral against Heath Nuckolls, who lived in Otoe county in this state.   On June 10, 1879, the note was sent to an Omaha bank with instructions to place it in the hands of an attorney for collection.   The Omaha bank sent it to the Nebraska City National Bank, which delivered it to S. H. Calhoun, an attorney at law, for suit.   On July 29, 1879, Mr. Calhoun wrote the Deseret National Bank that he had received the note, and had "brought suit against Heath Nuckolls alone."   Preparations were made for trial in December following in the district court of Otoe county, the bank having forwarded to the attorney the United States comptroller's certificate of its organization as a national bank and of its corporate capacity.   On October 8, 1879, the Deseret bank sold the note it held against the estate of S. F. Nuckolls to W. S. McCormick, and wrote to the attorney :

"SALT LAKE CITY, UTAH, Oct. 8, 1879.

"S. H. CALHOUN, Esq.: I have to-day sold the note of S. F. Nuckolls to W. S. McCormick, of this city, and given him an order on you for the Heath Nuckolls note; he will pay all costs incurred, and, we presume, have his own name substituted in the place of the Deseret National Bank.   Please return us the comptroller's certificate relative to our organization, and oblige,     L. S. HILL,
                                                "Cashier."

The attorney received and answered this letter as follows :

"NEBRASKA CITY, OTOE CO., NEB., Oct. 14, 1879.

"DESERET NATIONAL BANK: Yours of October 8 announcing sale of the note in suit against Heath Nuckolls duly received.   I think suit had better go on in your name, and it can be treated as a trust for Mr. McCormick.   Depositions will have to be taken before the first Monday

in December.    I also herewith enclose you the comptroller's certificate of your organization heretofore sent me.

"S. H. CALHOUN."

No further correspondence appears to have passed between these parties until September 5, 1887, but the attorney continued the suit against the defendant Nuckolls without substituting the name of the assignee and owner of the note as the *cestui que trust*, and on December 8, 1880, obtained judgment in favor of the bank for the sum of $1,420.23, with interest at ten per cent per annum until paid.

On September 8, 1880, execution issued on the judgment, and on June 6, 1881, and December 28, 1882, *alias* writs of execution were issued, and not satisfied.    On January 20, 1880, a transcript of the judgment was filed and indexed in the clerk's office of the district court of Richardson county.    On October 14, 1885, a transcript of the issuance of executions was filed in the same office in Richardson county.

On December 13, 1884, one Albert Harmon, holding a tax lien on certain real estate owned by Heath Nuckolls in Otoe county, entered foreclosure proceedings in the district court of that county, making the Nebraska City National Bank, Lewis Dunn, and the Deseret National Bank defendants, as holding liens against the property.    Mesne process was not served on the last named defendant.    On April 6, 1885, the attorney, Mr. Calhoun, filed the answer of the Deseret bank, setting up that the judgment of December 19, 1879, was unpaid, and was a valid subsisting lien on the land described "to the exclusion and precedence of all others."

On April 7, 1885, a decree of foreclosure was taken in Harmon's case, directing the sale of the land to pay the liens of the parties, that of the Deseret bank being adjudged third in order of priority, amounting to $2,234.49, bearing interest at ten per cent per annum.

On August 1, 1885, the land was sold for $1,250. The sale was confirmed, and after discharging the two prior liens and the costs, $798.06 were paid to the attorney, Mr. Calhoun, by the clerk of the district court on October 1, 1885, "as the attorney for the Deseret National Bank."

On May 20, 1886, Mr. Calhoun brought the present action in the name of the Deseret National Bank against Heath Nuckolls, Robert Hawke, Isham Reavis, William E. Nuckolls, Rupert Nuckolls, Bruce Nuckolls, Paul Nuckolls, and Allen Fowler, executor of S. F. Nuckolls, deceased, as debtors of Heath Nuckolls, or as being in possession of equitable assets of which he was entitled to the possession and the proceeds. The plaintiff's petition sets up the rendition of the judgment of December 8, 1880, and the subsequent proceedings thereunder, and was in fact a creditor's bill against the appellee in the case to enforce the satisfaction of the judgment debt in favor of the Deseret National Bank.

On January 4, 1888, the defendant Heath Nuckolls answered by his cross-petition and counter-claim, setting up that the plaintiff, on December 8, 1879, recovered a judgment in the district court of Otoe county for the sum of $1,423.23 and $12 costs, which remains but partially satisfied; that a transcript thereof has been filed in the clerk's office of the district court of Richardson county, and that this suit is based thereon. He also admits the allegations of the petition in the suit of Greever and others; and further answering, by way of cross-petition, the defendant alleges that, after the rendition of said judgment, he entered into an agreement with one Allen Fowler, as the executor of S. F. Nuckolls, deceased, whereby certain litigation then pending in the district court of Otoe county, between this defendant and Fowler, as executor, and certain other matters in difference between defendant and said executor should be settled and amicably arranged, by virtue of which said executor agreed to assume and pay off the

said judgment against this defendant in favor of the Deseret
bank; that such agreement was made long prior to the
issuing of any execution on said judgment as mentioned in
the petition, and this defendant further alleges that the
said Allen Fowler, as executor, fairly and fully carried
out the provisions of the agreement entered into; that on
November 21, 1881, said Fowler paid to the holder and
owner of the judgment at Salt Lake City the sum of
$1,698.02, the full amount of the judgment with interest,
but not including any amount collected on execution prior
thereto, as alleged in the petition herein, but the whole
amount of the judgment and interest was considered as
due, owing, and payable; that on December 15, 1884, one
A. M. Harmon commenced his action in the district court
of Otoe county against defendant, the Nebraska City Na-
tional Bank, the Deseret National Bank, and others, the
object and purpose of which was to foreclose certain tax
liens held by Harmon on certain lands owned by defendant
in said county of Otoe; that the plaintiff herein was made
defendant in the action, as the alleged holder of the lien
on said described real estate, which was subject to the lien
of the plaintiff Harmon therein; that thereafter, on April
6, 1885, the plaintiff herein, the Deseret bank, filed its
answer, setting up that the judgment against this defendant
in favor of this plaintiff had been duly recovered; that the
same was a lien upon the premises from the date of its
rendition; that it was at the date of the filing of said
answer still unreversed and unpaid, and was a valid and
subsisting lien upon the premises, and that by said answer
judgment and decree were prayed that the land be sold,
and from the proceeds the judgment, interest, and costs be
paid and discharged.

Also on April 7, 1885, at the regular term of the dis-
trict court of Otoe county, judgment and decree were ren-
dered therein in favor of the plaintiff's first lien upon the
real estate, described in the petition, for the aggregate

amount of the taxes paid thereon by him, with interest thereon to the last date, being the sum of $86.70; and as to the defendants Greenwood and the Deseret National Bank, it was found that there was unpaid and due on the judgment set up in the answer of Greenwood, including interest, the sum of $262.36, which was a second lien on said real estate; and that there was due and unpaid on the judgment set up in the answer of said bank, including interest, the sum of $2,234.49, which was a third lien on said real estate; and further, that said liens should be enforced against the same. The defendant Heath Nuckolls was required, within twenty days from the rendition of the judgment and decree, to pay the costs of the action, and for the benefit of the plaintiff, the defendants Greenwood and the Deseret bank were to pay the aggregate amount of the three liens described, with interest from that date, and in default of such payment, that said real estate be sold by the sheriff of Otoe county, as upon execution at law, and that the proceeds be applied, first, to the payment of costs; second, to the plaintiff's lien; third, to the lien of Greenwood, fourth, to that of the Deseret National Bank, and fifth, as should be thereafter directed by the court. That by such sale the defendants Heath Nuckolls and Lewis Dunn, and all persons claiming under them, were forever barred and foreclosed of all right, title, and interest in, to, or upon said real estate, the possession of which, after confirmation and sale, was by the sheriff to be delivered to the purchaser, to-wit, the west half of the southeast quarter of section 7, township 7 north, of range 12 east, in Otoe county, Nebraska.

On October 1, 1885, the plaintiff in the present suit, by the receipt of its attorney to the clerk of the district court, received and had in said action the sum of $798.06, the surplus aforesaid, and has retained the same and has failed to pay the amount, or any part thereof, to defendant.

It is further alleged that at the date on which the

plaintiff received said sum of $798.06, there was nothing
due it on the judgment or otherwise; that the same had
been long ·prior thereto, on December 21, 1881, paid to
plaintiff as it well knew, and has not been repaid though
often requested and is still due and owing, with inter-
est thereon. Further, it is alleged that the defendant was
not informed of, and did not know the facts as to the judg-
ment until long after the commencement of this action, on
November 1, 1887, and that he was unable to secure the
proof thereof; that all of said transactions occurred in
Utah territory, where the plaintiff and Allen Fowler re-
side; that defendant was not advised by any person of these
facts, but that the plaintiff had full knowledge of them,
and that the judgment was no longer a lien upon the
property of defendant.

Subsequently, on August 1, 1888, the plaintiff moved to
strike the amended answer of defendant from the files, for
reasons presented to the court, which were overruled. At
the same time the plaintiff moved for an order on the de-
fendant to make his answer more definite and certain,
which motion was overruled. The plaintiff's demurrer to
the defendant's cross-petition and answer, on the grounds
that the same do not contain facts sufficient to maintain a
cause of action, was heard and overruled.

On August 30, 1888, the plaintiff answered the cross-
petition and reply to the amended answer of defendants,
setting up:

1. That the action was instituted, conducted, and pros-
ecuted, from its inception down to June 16, 1888, without
the authority of the plaintiff in the suit.

2. That it was never served with process in the action
of A. N. Harmon, commenced December 15, 1884, or at any
other time, in the district court of Otoe county against
Heath Nuckolls and others; that it never made its ap-
pearance in that action, and never authorized any one to enter
or make appearance in the action; that the answer filed

April 6, 1885, purporting to be that of the Deseret National Bank, was not the answer of plaintiff, and was filed without its knowledge, authority, or consent, and that each allegation therein made, and the relief asked, were made and sought without the knowledge, authority, or consent of the plaintiff; that it has never been within the state of Nebraska, but is a national banking association, organized under the laws of the United States in the territory of Utah, and has never had any officer or managing agent in Nebraska, and that neither the plaintiff nor any of its attorneys knew of the prosecution of Harmon's action or of the pretended answer filed therein until the 16th day of June, 1888.

3. That S. H. Calhoun was not the attorney of said Deseret bank, and had no authority to file its answer or to receive said sum of $798.06 as the attorney of the plaintiff or otherwise, and plaintiff denies that said sum, or any part thereof, was ever paid to it, or to its attorney.

4. The plaintiff further denies any allegation in the cross-petition set up not in this answer admitted.

For a second defense to the cross-petition of Heath Nuckolls, the Deseret bank, not waiving its defense hereinbefore set forth, further alleges:

1. That the action named in the amended answer and cross-petition, which lately, before the commencement of this suit, depended in the Otoe county district court, wherein A. M. Harmon was plaintiff and Heath Nuckolls, the Nebraska City National bank, the Deseret National Bank (this plaintiff), and Lewis Dunn were defendants, it was by the plaintiff alleged that the defendant Nuckolls was the owner in fee simple of the land described as the west half of the southeast quarter of section 7, township 7 north, of range 12 east, in the county of Otoe, and that the plaintiff had a lien thereon for taxes, and that the other defendants had each a lien on said land by reason of judgments which each owned and held, of record

in the Otoe county district court, in full force and effect; that the plaintiff petitioned for a sale of said land under a decree of the court for the purpose of satisfying the liens thereon in the order of their priority.

2. That the judgment which the plaintiff then had of record in Otoe county, as a lien on said land, was the same judgment which the defendant Nuckolls, in this action, by his amended answer and cross-petition alleges was finally and fully paid off and discharged to this plaintiff on the 21st day of November, 1881.

3. That on April 4, 1885, the defendant Nuckolls filed his answer in the cause mentioned, admitting that he had the title to said land, and put in issue the lien claimed by the plaintiff and those of the other defendants therein.

4. That on April 7, 1885, after the separate answers of the defendants had been filed, asserting their judgment liens, the cause was finally heard and judgment entered for the plaintiff as having the first lien upon said land, for the aggregate amount of taxes paid thereon, and interest to the last date, amounting to $86.70; and as to the defendants Greenwood and the Deseret National Bank there was unpaid and due on the judgment set up in the answer of Greenwood, including interest, $262.36, which is a second lien on said real estate; and that there is due and unpaid on account of the judgment set up in the answer of the Deseret National Bank, including interest, $2,234.49, which is the third lien on said real estate, and it was adjudged' that the said lien should be enforced against said real estate and in default of the payment of the costs of this suit, within twenty days, by the defendant Heath Nuckolls, who should pay for the benefit of the plaintiff, the defendants Greenwood, and the Deseret National Bank, the aggregate amount of the three liens described, with interest from the date of the decree, and in default thereof that said real estate be sold by the sheriff of Otoe county as upon execution at law, and the proceeds applied to satisfy the

costs of suit, and the amounts of said liens according to their priorities, with interest, and, further, as the court shall thereafter direct; that by such sale the defendants Nuckolls and Dunn, and all others claiming under them, or either of them, should be forever barred and foreclosed of all right, title, and interest in and to said real estate, the possession of which upon confirmation of such sale shall be by the sheriff delivered to the purchaser.

5. The Deseret National Bank further sets up that the judgment remains in full force and effect, unreversed, and has not been modified or vacated, and that the sum of $798.06 paid to the attorney, S. H. Calhoun, October 1, 1885, was paid under, by virtue, and in pursuance of the judgment aforesaid, in said Otoe county district court, and that the defendant Nuckolls ought not to be permitted to have his answer and cross-petition to sue for the recovery of said sum, forasmuch as the same was paid under and in pursuance of the orders, decree, and final judgment of a court of competent jurisdiction, and the matters, allegations, and issues in his answer and cross-petition set up and made are *res adjudicata*, and have been finally settled in the parties to this action.

6. That the Deseret National Bank presents herewith the complete record of the action of *Harmon v. Heath Nuckolls and others*, and pleads the same, and the judgment therein, in bar of the claim asserted in the answer and cross-petition of the said Heath Nuckolls, with prayer for the dismissal of the same, with costs.

This record is more extended than was required, for the purpose of presenting the questions upon which, as I conceive, the case must be decided.

It is not deemed necessary to discuss the matters presented in the first or second points of the brief of counsel for the appellant. Although it were true, and so conceded, that the action, to reverse which this appeal was taken, was commenced in the district court without author-

ity, and that the cross-petition and counter-claim of the appellee ought to have been dismissed at the request of the appellant, even then it is no less true that after such request was refused by the trial court the appellant, as defendant to the cross-petition, made answer to the same upon the merits and submitted to the trial thereof. At the hearing we were all of the opinion that by this course all questions of the jurisdiction of the court and its right to hear and determine the cause were waived. In expressing this view neither the court, nor the writer as a member of it, wishes to be understood as expressing an opinion whether or not the appellant pursued the wiser or more prudent course in answering to the merits rather than seeking other remedy, as the case stood, upon the overruling of its motions and demurrer.

The cross-petition of the defendant Nuckolls was in the nature of an action in assumpsit for money had and received by the plaintiff to the use of said defendant. The plaintiff, The Deseret National Bank, set up, by way of admission in answer to the defendant's cross-petition and counter-claim, the identical facts relied upon by the defendant therein as hereinbefore stated, in so far as the same depended upon the proceedings in the district court of Otoe county, and pleaded and relied upon the same as being judicial proceedings in and the judgment of a court of competent jurisdiction, and in a proceeding wherein it had jurisdiction as well of the subject-matter as of all the parties thereto.

It is not deemed necessary to refer to the evidence in the case other than that of the record in the action of *Harmon v. Nuckolls, The Deseret National Bank, and others*, stated in the cross-petition of the defendant Nuckolls, and in the answer of the bank. This record is relied upon by both parties, and appears to be complete, in due form, and sufficiently proved. The appellee, in the brief of counsel, attacks the pleading and brief of appellant as inconsistent

in embracing propositions contradictory and paradoxical. As a criticism, the reflections of counsel are not without force, and are fairly well taken.    Counsel cited the case of *School District v. Holmes,* 16 Neb., 487; that of *Hopper v. Hopper,* 11 Paige, Ch. [N. Y.], 46; Bliss on Code Pleadings, sec. 243, and Maxwell's Pleading and Practice [3d Ed.], 93.    The doctrine of all of these authorities is doubtless correctly laid down by Judge MAXWELL, that "while the Code permits a defendant to set forth in his answer as many grounds of defense, counter-claim, or set-off as he may have, and places no limitation upon the right, except that the party shall state in the verification that he believes the facts stated in the answer to be true, yet this clearly requires consistent defenses, because it is impossible for two alleged grounds of defense, which plainly contradict each other, to be true."    (*Citizens Bank v. Closson,* 29 Ohio St., 78.)    The authors in these cases are laying down a rule for the construction of pleadings when the same are brought before a court by the established methods.    None of them go to the length of holding that, where an answer contains two or more inconsistent defenses, and the opposite party, without motion, or in any manner, invokes a ruling or decision of the court, but proceeds to trial on such defenses, either in the trial court, or on error, can he insist that all of such defenses be rejected on account of their inconsistency with each other.    In the case cited from the 29th Ohio St. Report doubtless the correct practice was pursued where the court, on motion of the plaintiff, ordered the defendant to elect which of the two supposed inconsistent defenses he would rely upon; and that case was reversed, not because a correct rule was not followed, but because in the judgment of the appellate court the two defenses were not inconsistent, and the order for the defendant to elect in that case was error.    In the case at bar it may be conceded that the defenses set up to the cross-petition by the answer of the plaintiff in the first

and second defenses of the answer were inconsistent, and that upon proper application the plaintiff would have been required to elect upon which of the two defenses pleaded he would rely. At the same time the inconsistency was more serious in law than in fact; it was more technical than objectionable. The plaintiff made no motion requiring the plaintiff to elect, nor did he take any exception to the form of the plaintiff's pleading, and I think, therefore, if either count of the answer is found to present a sufficient defense to the cross-petition, the plaintiff is entitled to the benefit of it.

While, as before stated, there is an apparent inconsistency in the defenses set up in the first and second counts of the plaintiff's answer to the cross-petition, such inconsistency is more superficial than substantial. The tenor and effect of the first count are that the defendant was not represented by an attorney of its employment in the commencement and prosecution of the action, nor is it chargeable with the money set up as the foundation of the defendant's counter-claim, because the attorney who drew and receipted for the money from the clerk's office of Otoe county was not authorized to receive money by the plaintiff. These are the substantial facts alleged in the first count. It is true there are other facts set up, that the attorney was not that of the plaintiff authorized to prosecute in its name, or to accept service of process for it in the suit of Harmon. But it is not alleged that the proceedings in the Otoe county district court, from the commencement of Harmon's action up to and including the final judgment therein, were not, in fact, had and made in a court of competent jurisdiction, nor that such proceedings were not juridical in form. And the sole object and purposes of the second count were and are to allege and bring before the court the fact that the money sued for by the defendant in his counter-claim was derived from the property of the defendant, and received by the plaintiff, if at all, under due process of law,

as the judgment of a court of competent jurisdiction act-
ing within the requirements of law.

The fact is not to be denied that there is an apparent
inconsistency in the two propositions: the plaintiff's denial
that it ever received the money, and that it received the
money under the process of law.    But it is equally appar-
ent and clear to the whole case, that, while the plaintiff
received the money in the eye of the law, it never did re-
ceive it in point of fact.

There is another view to be taken of the question.    So
far as the case presented is concerned the defendant stands
in the attitude of a plaintiff.    Although designated as the
defendant, by his cross-petition and counter-claim he in re-
ality sues the Deseret National Bank for money had and
received to his use.    Hence it was incumbent upon him,
by his pleadings, to allege, and, by evidence, to prove, the
material facts and circumstances of the receipt of the
money by the plaintiff, and necessary to establish his right
to the money and to demand its return to him.    Accordingly
by his cross-petition he set up and alleged all the material
facts, lacking the arguments and conclusions contained in
the first and second counts of the plaintiff's answer, and
the principal if not the sole proof in support of his cross-
bill and counter-claim was the record of the judicial pro-
ceedings of the judgment in Otoe county.    To state it
differently and briefly, the defendant, being sued by the
plaintiff in Richardson county, sets up, by cross-petition and
counter-claim against the plaintiff, the commencement of
the suit against him by Harmon in the district court of
Otoe county; the impleading of the Deseret bank in the
action ; the appearance of the plaintiff therein, and its lien
on the property of the defendant; the decree and sale of
the property to satisfy the liens of the action; the pay-
ment into court of the proceeds, and the receipt by the
plaintiff of $778.06 in satisfaction of that amount of its
lien and judgment which the defendant claims to recover

back upon his cross-bill and counter-claim. Upon the supposition that the plaintiff had made neither plea nor answer to this claim, but had only appeared after judgment, and had brought his cause to this court on appeal, in my view the identical question would have been presented by the record which is now before us; and such judgment could only be affirmed upon its appearing to the court that it was rendered upon sufficient allegations of pleading, and upon competent and satisfactory evidence.

A case involving the same question here presented was brought before the supreme court of the territory of Nebraska in the case of *Paynter v. Mills*, reported in 1 Neb., 440. So far as appears, in that report but one precedent was cited as authority, either by counsel in argument or by the court in its opinion, and that to a collateral issue. It is probable at that early day but few authorities were accessible. But the experienced and cultivated mind of the judge who delivered the opinion directed him to the same logical conclusions which had already been promulgated by the jurists of English and American law. The facts were that certain land had been entered under an act of congress, for the relief of citizens of towns on land of the United States under certain circumstances, approved May 23, 1844. The land being within the corporate limits of the city of Omaha, it was by the purview of the act made the duty of the mayor to convey the lots into which the land had been subdivided to such purchasers as were entitled thereto under the provisions of the act; and in cases of conflicting claimants to any of such town lots the mayor was "to hear and determine all questions of title according to law and evidence, and give to the person, adjudged to have the best title a deed in fee simple." A certain lot was claimed by both John I. Paynter and George M. Mills, of Omaha. Upon a hearing before the mayor he decided in favor of the title of Mills, and conveyed the lot to him. Paynter brought ejectment for pos-

session, which resulted in a verdict and judgment for th defendant, from which the plaintiff appealed, and the supreme court held that "the decision of a tribunal acting within its jurisdiction, whether it be a court or merely a board, or an officer having special enumerated powers, can be reviewed or set aside only by a direct proceeding for that purpose."

In the case of *Marriott v. Hampton,* 7 Term R. [Eng.], 269, the defendant formerly brought an action against the plaintiff for goods sold for which the plaintiff had before paid and taken a receipt; but not being able to produce the receipt at the trial, and having no other proof of the payment, he could not defend the action, but was obliged to submit to judgment and pay the money again, and gave a *cognovit* for the costs.    Subsequently, he found the receipt, and brought this action for money had and received to recover back the sum wrongfully enforced in payment.    But Lord Kenyon was of the opinion, at the trial, that since the money had been paid under legal process it could not be recovered back again, however unconscientiously retained by the defendant, and the plaintiff was nonsuited. The chief justice said: "If this action could be maintained, I know not what cause of action could ever be at rest. After recovery by process of law there must be an end of litigation, otherwise there would be no security for any person.    I cannot, therefore, consent even to grant a rule to show cause lest it should seem to imply a doubt.    It often happens that new trials are applied for on the ground of evidence supposed to have been discovered after the trial, and they are as often refused, but this proposition goes much further."

Lord Ashhurst was of the same opinion, and the other justice, upon the king's bench, said: "It would tend to encourage the greatest negligence if we were to open a door to parties to try their causes again because they were not properly prepared the first time with their evidence."

The case of *Huffer v. Allen and another*, reported in the *Jurist* [Eng.], vol. 12, pt. 1, p. 930, is to the same effect, and it was there held that "A demand for which action was brought, having been reduced below £20 by payment, and the plaintiff afterwards signing judgment in default of appearance for the original claim, and arresting the defendant by *capias* on the judgment, the defendant was estopped by the judgment from alleging that the arrest was maliciously made for a sum which did not authorize it."

The court said: "The judgment must be for the defendants, which I regret, for if the acts of the defendants as plaintiffs in the former action were willfully done, they are unjustifiable. But we must stand on the principles and process of the law. There is here a judgment which is equivalent to an act of the law, and constitutes an estoppel, and I take it that this judgment imparts an absolute incontrollable verity of all the words convey, against which neither of the parties to the suit can aver anything so long as it remains. So long as there stands a judgment saying that £28 is due, that cannot be controverted or called in question. The counsel says, if the plaintiff cannot maintain this action, he has no other remedy. But that is not the case. His client might have caused the judgment to be corrected, and the execution prevented or set aside; otherwise we are concluded by first principles. It may be that if the judgment had been first set right, this action would have afterwards lain, but there is no opinion upon this point."

There are abundant American cases, cited by counsel for the plaintiff, to the same effect: *Corbet v. Evans*, 25 Pa. St., 310; *Tilton v. Gordon*, 1 N. H., 33; *Le Grand v. Francisco*, 3 Munford [Va.], 83; *James v. Cavit*, 2 Brevard [S. Car.], 174; *Stephens v. Howe*, 127 Mass., 164; *Greenabaum v. Elliott*, 2 Cent. L. J., 439; *Kirklan v. Brown's Admr.*, 4 Humph. [Tenn.], 174; *Binck v. Wood*, 43 Barber [N. Y.], 315.

The only authorities cited to this branch of the case by counsel for appellee is the latter clause of sec. 524 of 1 Greenleaf on Evidence, as follows: "Another qualification of the rule is that a party is not to be concluded by a prior suit or prosecution, where from the nature or course of the proceedings he could not avail himself of the same means of defense or of redress which are open to him in the second suit." There is nothing in the nature or cause of the proceedings pointed out in the Harmon suit which the defendant could avail himself of in the second suit, and not in that one except that at that time he did not know, as he alleges, that he had paid off the note upon which the original suit had been brought against him in Otoe county.

This allegation falls far short of the facts in the case of *Marriott v. Hampden*, *supra*, where the defendant knew that he had paid for the goods, but had temporarily lost the receipt; and under the rules of evidence of that day could not prove the fact of payment. No cases are cited to the text of Greenleaf, but there is a citation to Starkie on Evidence, 214, 215, which is not pertinent to the question, and is doubtless a miscitation.

I am of the opinion, upon the authorities, and from a consideration of the nature and conclusive character of judicial proceedings, that the claim set up by the appellee's cross-petition and counter-claim, and proved by the record produced by him, is insufficient to sustain an action in the present collateral proceeding. The judgment of the district court is therefore reversed, and the counter-claim and cross-petition of the appellee are dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.